[No. 22495. *En Banc.* October 29, 1930.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT GOLLIHUR, *Appellant*.[1]

J. G. *Thomas* and W. A. *Toner*, for appellant.
W. G. *Coleman*, for respondent.

MILLARD, J.—By the first count of an information, Jack Hoffman was charged as principal with the crime of attempt to commit rape, and Thomas D. Johnson and Robert Gollihur were charged with aiding and abetting Hoffman. By the second count of the information, Hoffman, as principal, and Johnson and Gollihur as aiders and abetters, were charged with the

[1] Reported in 292 Pac. 421.

crime of assault in the second degree. Hoffman pleaded guilty. The trial of the other two defendants resulted in acquittal of Johnson and verdict of guilty as to Gollihur on the second count. From the judgment and sentence pronounced in accordance with the verdict, Gollihur prosecutes this appeal.

The statute relating to aiding and abetting, so far as material to this cause, provides that:

"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids and abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such." Rem. Comp. Stat., § 2260.

The facts are as follows: The prosecuting witness is a telephone operator, unmarried, and twenty years old. On August 29, 1929, she departed from the telephone office in the city of Walla Walla, about ten thirty p. m. in company with three other telephone girls. They attended a dance, where they remained until midnight. At East Main and Touchet streets, the girls separated. At this point an eight-cylinder Auburn sedan, in the front seat of which were Hoffman, Gollihur and Johnson, drove so close to the place where the girls were standing and bidding each other good night that the girls were compelled to back away from the curb. The prosecuting witness then started on her way home alone and unprotected, and was followed by the three men from that time until the assault by Hoffman on Oak street.

Appellant is twenty-one years of age, a drug store clerk and a patron of the barber shop where Hoffman was employed. He admitted that he met Hoffman

three weeks prior to the date of the assault, but testified that he did not know Hoffman's name. Gollihur, Hoffman and Johnson were present at the same dance that the prosecuting witness and her three girl friends attended. The girls were not acquainted with any of the three men, nor did either of the three men know any of the girls. While there is no evidence that the three men went to the dance together, there is testimony that they met there, and that Hoffman and Gollihur talked together about "getting some girls." The three departed from the dance hall in each other's company, and rode in the front seat of appellant's automobile while appellant was driving that car around town, as he explained, to "put mileage on it."

The three men rode up and down Main street, and saw the prosecuting witness and her girl friends separate at Main and Touchet streets, the prosecuting witness, as stated above, going her way home alone. The automobile was stopped near an alley to permit Hoffman to get out of the car, he having so requested and having informed his companions that he knew a girl walking along the street that they had passed. It is clear from Gollihur's testimony that Hoffman was not acquainted with the girl, and that appellant was convinced that Hoffman did not know the girl. There is some testimony that Hoffman told Johnson and Gollihur that he would meet them later at a restaurant, but this is contradicted by other testimony that they waited around " to pick him up."

The girl walked north on the west side of Touchet street across Main, Rose, Sumach and Cherry streets to Oak street. Hoffman proceeded to shadow the girl from the time he left the automobile. Appellant drove along behind Hoffman and the girl, passed them, turned around at the end of Touchet street and again passed Hoffman and the girl as she was turning the

corner at Oak and Touchet streets, about one-half block from the home of the girl on Oak street, and only a fraction of time prior to Hoffman's attempt to rape the girl. At this point Hoffman was about fifteen feet behind the girl. The appellant then drove partially around the block, parked his car on Idaho street (about one-half block west of the place on Oak street where the girl was assaulted), and turned out the lights of the automobile.

The testimony was conflicting as to whether the place where the lady was assaulted by Hoffman was visible to appellant from the point at which his car was parked. On this question of fact, the jury were assisted by their view of the premises during the trial. At Cherry street, one block south of Oak street (the street on which the victim resided), the girl hastily crossed to the east side of Touchet street as she discovered she was followed by a man on foot. As she turned east at the corner of Oak and Touchet streets, she noticed the man was close behind her, and she commenced to run. She was overtaken when a few feet from her front yard. Hoffman knocked her down with his fist, dragged her to the parking, choked her as she attempted to scream and endeavored to rape her. The strangling caused a gurgling noise which was heard by Gollihur and neighbors, but no attention was paid to it. Hoffman released his hold on the girl's throat, whereupon she screamed, and her cry brought her mother and neighbors to the rescue.

Gollihur admitted that, almost coincident in time with the parking of his car, he heard something that sounded like a gurgling or a scream, but he decided that it was a dog. In response to Gollihur's inquiry whether he heard a scream, Johnson answered in the negative. Both testified they could not see the assault from the point where they were sitting in appellant's

car. Gollihur stated, when questioned at the police station,

"Then we both heard a scream. I said, 'There is something there that is not right;' he said, 'There must be.' Then we both agreed to go down. I suspicioned probably this fellow had maybe done what we think he did."

Appellant then turned on the automobile lights, drove west on Oak street, passing the home of the assaulted girl, and continued to drive around the neighborhood for the purpose of taking Hoffman home. One witness, a policeman, testified that appellant informed him that he saw Hoffman when about fifteen feet from the girl and thought "that something like that was going to be pulled off," and that following the assault the appellant drove around to "pick up" Hoffman. Appellant did not find Hoffman, who fled from the scene of his crime and was apprehended in his room the early morning of August 30, a few hours subsequent to the arrest of appellant and Johnson.

█ The only error assigned is the denial of the motion for a directed verdict of acquittal notwithstanding the jury's verdict, counsel for appellant contending that there was not sufficient evidence to justify a finding that appellant was guilty of any crime.

Summarized, the argument of counsel for appellant is as follows: Appellant did not by word or act encourage, aid, assist, or abet Hoffman in his assault upon the girl. Hoffman was a guest in appellant's automobile. The only act contributing or aiding Hoffman was in stopping the automobile at Hoffman's request to permit him to get out of the car when he said he knew the girl. There is no proof that Hoffman had a felonious intent at that time. The driving of the automobile up and down the street and the parking of same unlighted were only such acts as might have been done

by any normal person under the same circumstances. Appellant did not know that Hoffman contemplated an assault, or that an assault had been committed, until after his and Hoffman's arrest. Though he was in his automobile near the scene of the crime, and intended to later take Hoffman home, he did not know that a crime was being committed. He was not at that place by preconcert. There was no intention of aiding Hoffman, nor is there any testimony tending to show that he intended to aid Hoffman, or that Hoffman had knowledge that the appellant intended to aid him. In support of the foregoing argument, counsel cites the following:

"The advice or encouragement which will render one an accessory before the fact may be by acts or words, but it must, to create guilt, be used with the intent to encourage and abet the crime." 1 R. C. L., p. 147.

"In the absence of preconcert, or at least of intent to aid and knowledge thereof on the part of the actual perpetrator of a crime, the mere presence of a person at the time and place of a crime does not make him a principal in the second degree, where he does not aid or abet, although he makes no effort to prevent the crime, and even though he may mentally approve of it, and be benefited by it, unless he is under a legal duty to prevent it." 16 C. J., p. 132, § 121.

What understanding Johnson, appellant, and Hoffman had at the time Hoffman was permitted to leave the car to follow the girl, the evidence does not disclose. It is hardly probable that either of the three would admit that appellant agreed to patrol the street to warn Hoffman of the approach of police or others who might thwart him in his purpose to assault the girl. Nor is it likely that either of the three would admit that the automobile was parked unlighted near the scene of the crime for the purpose of watching for the approach of those who might frustrate the design

of Hoffman. That the car was parked near the scene of the felony for the purpose of guarding against the approach of officers and others, and with the idea in view of aiding Hoffman in making his escape, is fairly inferable from all of the circumstances.

Appellant refrained from going to the rescue of the girl when she made two cries for assistance. He very leisurely rode up and down the street looking for Hoffman, following the assault, when he suspected that Hoffman had committed some act that the appellant and Johnson anticipated Hoffman intended to commit when he departed from the automobile. What act did he anticipate Hoffman contemplated? It is inconceivable that appellant believed that the gurgling and the scream were other than cries of distress. That the girl was resisting the advances of her assailant and was being maltreated, appellant could not help but know under all the circumstances. He knew, by virtue of his patrolling the streets and guarding against the coming of those who might interfere, that no one was near other than he, Johnson, Hoffman and the unprotected girl whom appellant last saw fleeing from Hoffman.

The jury refused to accept appellant's explanation. All of the facts and circumstances tend to show complicity of appellant in the transaction. Was there an absence of preconcert? Was there intent on the part of appellant to aid Hoffman, and did Hoffman have knowledge thereof? Preconcert may be shown by circumstances. The jury were warranted in believing that, at the time Hoffman departed from the automobile, it was understood that appellant would patrol the streets, watch for the approach of any who might prevent consummation of the crime, and aid Hoffman in making his escape when he had accomplished his foul purpose.

"Where the accused was present at the commission of the felony, but did not by word or act encourage or assist the perpetrator, although he intended to render assistance if needed, it is necessary, in order to render him criminally liable, that his presence should have been by preconcert. And preconcert is necessary where the accused, at a point distant from the scene of the felony, keeps watch with the intention of giving or suppressing information and thereby facilitating the consummation of the felony. But the rule is otherwise where the accused actually encouraged or committed any act which facilitated the commission of the felony, and in such case it is not necessary that the perpetrator of the felony should know that the accused intended to render, or had rendered, such assistance. The common intention need not be formed before convening at the place of the crime. It may have arisen on the spur of the moment, but it must exist at the time the crime is committed, and not merely before or after." 16 C. J., p. 129, § 116.

Keeping watch (and the facts justify a finding that appellant was keeping watch) while the crime was being perpetrated, so as to facilitate the escape of Hoffman or to prevent his being interrupted, was an aiding and abetting; taken in connection with the other facts in this case. Appellant patrolled the streets and parked his car to aid Hoffman. He gave encouragement to the girl's assailant by his presence with means for that assailant's escape. He refrained from lifting his hands or doing anything in response to the cries of the girl, when he must have known that she was appealing for assistance in the protection of her honor from the hands of a brute. Devoid of every manly instinct, the appellant leisurely drove up and down the streets in an endeavor to find Hoffman to take him home after the commission of the crime.

It was for the jury to decide, upon all of the evidence (it amply sustains their finding), whether the

214

appellant aided, assisted and abetted the perpetration of the offense.

The judgment is affirmed.

MITCHELL, C. J., BEELER, BEALS, MAIN, FULLERTON, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—Abhorrent as appellant's actions were, still there was no evidence from which a jury might properly infer that he knew or ought to have known of Hoffman's intent to use force before it was carried into execution, and, under the authorities cited in the majority opinion, a directed verdict should have been ordered.