[No. 39811. En Banc. September 10, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE W. GLAD-STONE, *Appellant*.*

*Albert R. Malanca*, for appellant.

*Ronald L. Hendry, Eugene G. Olson, Edmund E. Lozier,* and *Joseph D. Mladinov*, for respondent.

HALE, J.—A jury found defendant Bruce Gladstone guilty of aiding and abetting one Robert Kent in the unlawful sale of marijuana. Deferring imposition of sentence, the court placed defendant on probation. He appeals the order deferring sentencing contending that the evidence as a matter of law was insufficient to sustain a verdict of guilty. His point, we think, is well taken.

One who aids or abets another in the commission of a crime is guilty as a principal under RCW 9.01.030, which says:

> Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and

*Reported in 474 P.2d 274.

every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.

Gladstone's guilt as an aider and abettor in this case rests solely on evidence of a conversation between him and one Douglas MacArthur Thompson concerning the possible purchase of marijuana from one Robert Kent. There is no other evidence to connect the accused with Kent who ultimately sold some marijuana to Thompson.

When asked by Thompson—an agent of the police—where marijuana could be bought, the defendant did no more than name Kent as an individual who might be willing to sell some and draw a sketch of his location. There was no evidence whatever that the defendant had any association, understanding, agreement or arrangement, direct or indirect, tacit or express with Kent to aid or persuade him in any way in the sale of marijuana.

The conversation between defendant and Thompson occurred at defendant's residence. Douglas MacArthur Thompson, a 25-year-old student at the University of Puget Sound in Tacoma and an employee of the Internal Revenue Service of the United States, had done some investigative work for the government. From time to time, the Tacoma Police Department engaged him to investigate the use, possession and sale of narcotics, principally marijuana, among college students. When working for the Tacoma Police Department, he operated under the control and direction of the department's narcotics detail.

Thompson testified that Lieutenant Seymour and Detective Gallwas of the narcotics detail asked him to attempt purchase of marijuana from Gladstone. During the evening of April 10, 1967—between 10 and 11 o'clock—the two officers and Thompson drove in a police car to the vicinity

of defendant's apartment. Thompson went to Gladstone's door alone, beyond the hearing and out of the sight of the two officers. He knocked at the door and Gladstone responded. Thompson asked Gladstone if he would sell him some marijuana. Describing this incident, Thompson testified as follows:

> Well, I asked—at the time Gladstone told me that he was—he did not have enough marijuana on hand to sell me any, but he did know an individual who had quite a sufficient quantity and that was very willing to sell and he named the individual as Robert Kent, or Bob Kent as he put it, and he gave me directions to the residence and he—due to the directions I asked him if, you know, if he could draw me a map and he did.

When Thompson said he asked Gladstone to draw the map for him, he added, "I'm not sure whether he did give me the exact address or not, he told me where the residence was." He said that Gladstone then with pencil and paper sketched the location of Kent's place of residence. Thompson had no prior knowledge of where Kent lived, and did not know if he might have marijuana or that he had ever possessed it.

The two officers then took Thompson to Kent's residence where marijuana was purchased. The actual purchase was made by Thompson directly from Kent while Officer Gallwas and Lieutenant Seymour stayed in the police car. Kent was subsequently arrested and convicted of selling Thompson approximately 8 ounces of marijuana—the very sale which defendant here was convicted of aiding and abetting.

That ended the prosecution's case. Even if it were accorded all favorable inferences, there appears at this point a gap in the evidence which we feel as a matter of law is fatal to the prosecution's cause. Neither on direct examination nor under cross-examination did Thompson testify that he knew of any prior conduct, arrangements or communications between Gladstone and Kent from which it could be even remotely inferred that the defendant had any understanding, agreement, purpose, intention or design to participate or engage in or aid or abet any sale of mari-

juana by Kent. Other than to obtain a simple map from Gladstone and to say that Gladstone told him Kent might have some marijuana available, Thompson did not even establish that Kent and the defendant were acquainted with each other. Testimony of the brief conversation and Gladstone's very crude drawing consisting of 8 penciled lines indicating where Kent lived constitute the whole proof of the aiding and abetting presented.

Except for the conversation between Gladstone and Thompson and the map, the state showed only that the officers and their informant, Thompson, went to Kent's residence, more than three or four blocks from where Gladstone lived, bought some marijuana from him and proved that it was the substance known scientifically as cannabis. Thus, at the close of its case in chief, the state had failed to show any connection or association whatever between Gladstone and Kent or even that they knew each other, and at that juncture a motion for dismissal would lie.

Defendant's proof did not aid the state's case either. Apparently relying on the strength of his defense rather than the weakness of the prosecution, defendant, at the close of the state's case in chief, proceeded to put on his defense without challenging the sufficiency of the evidence. At the conclusion of all the proof, the evidence still showed no more than a possible accommodation to someone who said he wanted to buy some marijuana, and no connection whatever between defendant and the seller. The gap in the evidence remained; the missing link was still missing.

Gladstone took the stand and testified that he had been a student at the University of Puget Sound in Tacoma for 2 years and that he did not know the police informant, Douglas MacArthur Thompson, personally but had seen him on campus. Prior to the evening of April 10, 1967, he said, Thompson had never been in his home. As to Kent, the party whom he was accused of aiding and abetting, he said he had seen him between classes having coffee at the student union building, and perhaps had been in his company about 10 times altogether. He knew where Kent lived because once en route home in his car he had given Kent a

lift from the student union building to the latter's house. On this singular occasion, Gladstone did not get out of the car. He said that he did not know that Kent used marijuana or kept it for sale to other people.

Describing the incidents of April 10, 1967, when Thompson came to his door, Gladstone's version of the event differed somewhat from Thompson's. He testified that Thompson asked him to sell him some pot and Gladstone said, "No," and:

A. Then he asked me if I knew Rob Kent and I said yes. Q. What did you tell him? A. I said yes, I knew Rob Kent, and he asked me if I knew where Rob Kent lived and I said that I didn't know the address, nor did I know the street upon which he lived, but I told him that I could direct him there. Q. And did he ask you to direct him? A. Yes, I started to explain how to get there and he asked me if I would draw him a map. Q. And did you do so? A. Yes, I did.

They then had a conversation as to the location of a vacant grocery store above which was an apartment occupied by several college students, and as to the location of a house having the address 1102 shown in the sketch. After that brief conversation, Thompson said, "Thank you," and left. Gladstone testified that he did not counsel, encourage, hire, command, induce or otherwise procure Robert Kent to make a sale of marijuana to Douglas Thompson—or do anything that would be their legal equivalent. Thus, the state at the close of its case had not established prima facie that Gladstone, as charged, aided and abetted Kent in the sale of marijuana, and its position did not improve with the defendant's case.

■ If all reasonable inferences favorable to the state are accorded the evidence, it does not, in our opinion, establish the commission of the crime charged. That vital element—a nexus between the accused and the party whom he is charged with aiding and abetting in the commission of a crime—is missing. The record contains no evidence whatever that Gladstone had any communication by word, gesture or sign, before or after he drew the map, from which it could be inferred that he counseled, encouraged, hired,

commanded, induced or procured Kent to sell marijuana to Douglas Thompson as charged, or took any steps to further the commission of the crime charged. He was not charged with aiding and abetting Thompson in the purchase of marijuana, but with Kent's sale of it.

 Nor can it be said here that the state proved the existence of a conspiracy. In this state, conspiracy to commit a crime is a gross misdemeanor. RCW 9.22.010. The crime is complete when the conspirators have reached an agreement or understanding or consummated a plan to do the unlawful acts, for the conspiracy statute does not require proof of the common-law element of an overt act in pursuance of the conspiracy. RCW 9.22.020. Conspiracy, therefore, is a crime separate, distinct from, and unincluded in the crime which the conspirators have agreed to commit. Thus, where four men were charged with robbery and appellant tried separately was found guilty of conspiracy to commit a robbery, we held it error to regard the crime of conspiracy as a lesser included offense in the crime of robbery. *State v. McNeil,* 161 Wash. 221, 296 P. 555 (1931), *aff'd because of invited error.* One may become a principal through aiding and abetting another in the commission of a crime without participating in a conspiracy. But to be a principal one must consciously share in a criminal act and participate in its accomplishment. *Pereira v. United States,* 347 U.S. 1, 98 L. Ed. 435, 74 S. Ct. 358 (1954); *Roth v. United States,* 339 F.2d 863 (10th Cir. 1964).

Thus, even without prior agreement, arrangement or understanding, a bystander to a robbery could be guilty of aiding and abetting its commission if he came to the aid of the robber and knowingly assisted him in perpetrating the crime. But regardless of the modus operandi and with or without a conspiracy or agreement to commit the crime and whether present or away from the scene of it, there is no aiding and abetting unless one " 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " *Nye & Nissen v. United States,* 336 U.S. 613, 619, 93 L. Ed. 919, 69 S. Ct. 766 (1949).

In the instant case, the record is totally devoid of any proof whatever that the defendant and Kent had any arrangement, agreement or understanding, or in any way conspired and confederated with each other concerning the sale of marijuana by Kent. There was no proof that they had talked about it with each other, directly or through others. Whatever information the defendant is shown by the record to have given the police informant, to the effect that Kent might sell him some marijuana, amounted at most to no more than a statement of opinion and possibly no more than campus gossip, rumor or innuendo. That the police ultimately bought marijuana from Kent would not, without more, operate to convert defendant's statement to the police, that Kent would or might sell marijuana, into an aiding, abetting, counseling or encouraging of Kent to make the sale.

Gladstone's culpability, if at all, must be brought within RCW 9.01.030, which makes a principal of one who aids and abets another in the commission of the crime. Although an aider and abettor need not be physically present at the commission of the crime to be held guilty as a principal, his conviction depends on proof that he did something in association or connection with the principal to accomplish the crime. Learned Hand, J., we think, hit the nail squarely when, in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938), he wrote that, in order to aid and abet another to commit a crime, it is necessary that a defendant

> in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used—even the most colorless, "abet"—carry an implication of purposive attitude towards it.

Similarly, the same principle was declared in *Johnson v. United States*, 195 F.2d 673 (8th Cir. 1952):

> Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aid-

ing and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed.

Another case—and one nearly identical with the instant case—affirms the foregoing principles. In *Morei v. United States*, 127 F.2d 827 (6th Cir. 1942), undercover narcotic agents approached the defendant, a physician, and asked him to sell them narcotics. The doctor told the agents he had none, but gave the agents the name of another party and advised the agent to tell the latter that the doctor had sent him. The doctor added that "he will take care of you." The agents did arrange a purchase of illegal narcotics from the person to whom the doctor had referred them, and the doctor was thereupon charged with aiding and abetting in the sale.

After tracing the common-law distinction between a principal in the second degree and an accessory before the fact and pointing out that an aider and abettor must at least procure, counsel or command another to commit the felony actually committed, the court said, at page 830:

It is not necessary that there should be any direct communication between an accessory before the fact and the principal felon; it is enough if the accessory direct an intermediate agent to procure another to commit the felony, without naming or knowing of the person to be procured. *A person is not an accessory before the fact, unless there is some sort of active proceeding on his part; he must incite, or procure, or encourage the criminal act, or assist or enable it to be done, or engage or counsel, or command the principal to do it.* Halsbury, supra, § 531. [9 Halsbury, Laws of England § 531 (1909)]. . . .

. . . It is not to be assumed that Congress, in defining as a principal, one who "procures the commission of an offense," and using almost the identical language by which the common law defined aiders, abettors, and accessories, was providing for a new crime theretofore unknown. If the criterion for holding that one is guilty of procuring the commission of an offense, is that the offense would not have been committed except for such a person's conduct or revelation of information, it would open a vast field of offenses that have never been com-

> prehended within the common law by aiding, abetting, inducing or procuring . . .
>
> . . . [T]he only thing Dr. Platt did was to give Beach the name of Morei as a man from whom he might secure heroin to dose horses in order to stimulate them in racing. This is not the purposive association with the venture that, under the evidence in this case, brings Dr. Platt within the compass of the crime of selling or purchasing narcotics, either as principal, aider and abettor, or accessory before the fact.

(Italics ours.)

This court has recognized the necessity of proof of a nexus between aider and abettor and other principals to sustain a conviction. In *State v. Hinkley,* 52 Wn.2d 415, 325 P.2d 889 (1958), amplifying the term *abet,* we said, at page 418:

> Although the word "aid" does not imply guilty knowledge or felonious intent, the word "abet" includes *knowledge* of the wrongful purpose of the perpetrator, as well as counsel and encouragement in the crime.

and approved the instruction that:

> To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting or aiding in the commission of such criminal offense."

It would be a dangerous precedent indeed to hold that mere communications to the effect that another might or probably would commit a criminal offense amount to an aiding and abetting of the offense should it ultimately be committed.

There being no evidence whatever that the defendant ever communicated to Kent the idea that he would in any way aid him in the sale of any marijuana, or said anything to Kent to encourage or induce him or direct him to do so, or counseled Kent in the sale of marijuana, or did anything more than describe Kent to another person as an individual who might sell some marijuana, or would derive any benefit, consideration or reward from such a sale, there was no proof of an aiding and abetting, and the conviction should,

therefore, be reversed as a matter of law. Remanded with directions to dismiss.

HUNTER, C. J., FINLEY, ROSELLINI, and NEILL, JJ., and DONWORTH, J. Pro Tem., concur.

HAMILTON, J. (dissenting)—In my view the majority has stepped into the jury box and with a flourishing dissection of the evidence placed its own interpretation thereupon and, together with deftly importing the conspiratorial element of community of purpose, has substituted its verdict for that of the jury.

Before discussing the evidence adduced at the trial, I consider it appropriate to briefly review the law concerning the offense of aiding and abetting.

At common law, persons associated in some way in the commission of a crime were classified as principals and accessories. These classifications in turn were broken down into the categories of principals in the first and second degree and accessories before and after the fact. The designation of principal in the first degree was applied to the actual perpetrator of the crime, while the characterization of principal in the second degree pertained to one who was present, either actually or constructively, at the scene of the crime assisting in some fashion the principal in the first degree. The rank of accessory before the fact was attached to one who, though not present at the scene of the offense, counseled, advised, or directed commission of the crime, while one who, knowing a crime had been committed, aided or assisted the felon in escaping capture and prosecution was denominated an accessory after the fact. 22 C.J.S. *Criminal Law* § 81 (1961); 21 Am. Jur. 2d *Criminal Law* §§ 121, 124, 126 (1965); Clark and Marshall, Crimes, §§ 8.01, 8.02, 8.03, 8.06 (7th ed. 1967); 1 R. Anderson, Wharton's Criminal Law and Procedure §§ 106, 107, 110, 112 (1957); 1 W. Burdick, Law of Crime, §§ 219, 220, 221, 222, 223, 224 (1946).

This state, in common with many jurisdictions, legislatively abolished the common law classifications of principals in the first and second degree and accessories before

the fact by and through the enactment of RCW 9.01.030, which provides:

> Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.

In the construction of this statute this court has said that each of the words of the statute, from which criminal culpability can flow, signifies the overt and affirmative doing or saying of something on the part of a person charged which directly *or indirectly* contributes to the commission of the primary crime. *State v. Peasley*, 80 Wash. 99, 141 P. 316 (1914); *State v. Redden*, 71 Wn.2d 147, 426 P.2d 854 (1967).

It is not necessary to sustain a charge of aiding, abetting or counseling a crime that there be proof of a conspiratorial relationship or confederacy between the actual perpetrator of the primary crime and the one charged as an aider or abettor. Criminal conspiracy, in which concert of purpose becomes a salient element, is a separate substantive offense. RCW 9.22.010. Thus, it is stated in *Pereira v. United States*, 347 U.S. 1, 11, 98 L. Ed. 435, 74 S. Ct. 358 (1954):

> Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy.

As is apparent from its language, our statute does not require the presence at the scene of the crime of one aiding, abetting, counseling or inducing the commission of a crime. Neither does it require a community of intent, for by the last sentence it provides that absence of criminal intent on

the part of the person aided, abetted or induced to commit the primary offense is no defense to the aider or abettor. The statutory language and the overt action it contemplates does, however, give rise to the requirement that the aider or abettor entertain a conscious intent, *i.e.*, knowledge and intent that his action will instigate, induce, procure or encourage perpetration of the primary crime. *State v. Hinkley,* 52 Wn.2d 415, 325 P.2d 889 (1958).

The question to be resolved, then, in the instant case is whether the evidence sustains the jury's conclusion that the appellant entertained the requisite intent to render him culpable as an aider or abettor. In the resolution of this question, it is to be borne in mind that appellant's challenge to the sufficiency of the evidence requires that the evidence, and all reasonable inferences to be drawn therefrom, be interpreted in a light most favorable to the state. *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958). Furthermore, this court has held that an aider's or abettor's culpability may be established by circumstantial evidence. *State v. Pielow,* 141 Wash. 302, 251 P. 586 (1926); *State v. Gollihur,* 159 Wash. 206, 292 P. 421 (1930).

Although the evidence in the case is conflicting, the jury was entitled to believe that on April 10, 1967, one Robert Kent sold marijuana to Douglas Thompson, who at the time was acting as an undercover agent for and in concert with officers of the Tacoma Police Department; that appellant Gladstone, Kent, and Thompson were students at the same school in Tacoma; that prior to the evening of April 10, 1967, when Thompson talked to appellant, *Thompson and the Tacoma Police Department were unaware of Kent or his association with marijuana;* that appellant knew Kent, whom he met and associated with on the campus of the school they respectively attended; that both appellant and Kent lived off campus; that appellant knew where Kent lived and on at least one occasion had driven him home; that at the time in question the Tacoma Police Department had information that appellant was supposed to be holding a supply of marijuana for sale; that Thompson, who was but slightly acquainted with appellant, approached appel-

lant at his residence about 10:50 p.m. on April 10, 1967, and asked appellant to sell him some marijuana; that appellant then stated that he did not have enough marijuana on hand to sell but that he knew an individual who did have an ample supply and who was willing to sell some and named the individual as Robert Kent; that upon request appellant orally gave Thompson directions to Kent's apartment and drew a map to aid Thompson in finding the address, utilizing as a reference point a building known to appellant to be a student rendezvous where drugs had been sold; that by using the map and oral directions Thompson and the police went to Kent's residence; *that Thompson approached Kent and told him "Gladstone had sent me" whereupon Kent invited him to a room and sold him some marijuana for $30;* and that Thompson and one of the police officers later returned to the Kent residence, after again visiting appellant, and made a second purchase of marijuana at which time Kent was arrested.

Based upon the foregoing circumstances and the inferences reasonably derivable therefrom, I am satisfied that the jury was fully warranted in concluding that appellant, when he affirmatively recommended Kent as a source and purveyor of marijuana, entertained the requisite conscious design and intent that his action would instigate, induce, procure or encourage perpetration of Kent's subsequent crime of selling marijuana to Thompson. Furthermore, insofar as an element of preconcert be concerned, certainly the readiness with which the passwords, "Gladstone had sent me," gained a stranger's late evening entree to Kent's domain and produced two illegal sales strongly suggests, if not conclusively establishes, the missing communal nexus which the majority belabors.

Finally, the jury, with the witnesses before it, was in a far better position to evaluate the witnesses' candor, voice inflections, appearance, demeanor, attitude and credibility than this court viewing naught but the cold record.

I would sustain the jury's verdict and affirm the judg-- ment.

McGOVERN, J., concurs with HAMILTON, J.