[No. 772-3.   Division Three.   November 27, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN LOUIS MURRAY, *Appellant*.

*R. Max Etter, Sr.*, for appellant.

*Lincoln E. Shropshire, Prosecuting Attorney*, and *Adam Moore, Deputy*, for respondent.

BARNETT, J.*—Defendant was charged with three counts of willfully, knowingly and feloniously aiding and abetting the unlawful delivery of heroin. After a trial by jury, a verdict of guilty was rendered on each of the three counts and judgment was entered thereon. Defendant appeals that judgment.

Appellant was charged with having aided and abetted three separate deliveries of heroin to a Mr. Melvin Hedgpeth, who at that time was an undercover police officer in Yakima County. The information charged the defendant with aiding and abetting the delivery of heroin by a Robert Stigall to Officer Hedgpeth on July 5, 1972. Counts 2 and 3 charged defendant with aiding and abetting two other deliveries of heroin, one by O. D. Patterson to Officer Hedgpeth on July 7, 1972, and one by Vicky Daye Scott to Hedgpeth on July 26, 1972, respectively.

At the close of the state's case, no testimony was submitted by the defendant. The defendant moved to dismiss the three counts upon the ground that the state's evidence was insufficient to convict the defendant on any count, was insufficient to submit the same to the jury, and for the further reason that the evidence beyond peradventure had not established the aiding and abetting of the deliveries by the defendant in any of the counts. After denial of defendant's motion by the court and proceedings had in chambers with reference to the instructions, counsel were interrogated as to whether they had any exceptions, and the court received negative replies from each counsel. No instructions were proposed by the defendant.

Defendant's motion for an arrest of judgment, or in the alternative for a new trial, was denied.

It is contended by the defendant that the state produced insufficient evidence to go to the jury to show that he aided or abetted either Stigall, Patterson or Scott in the unlawful

*Judge Dolph Barnett is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

delivery of heroin, a controlled substance. The defendant's guilt in this case rests upon the evidence related below.

Officer Hedgpeth was introduced to defendant Murray by a party named Washington prior to the incidents in question. Then on July 5, 1972, at approximately 9:30 p.m., Officer Hedgpeth contacted Mr. Murray in front of the Pastime Pool Hall in Yakima and asked him for a half spoon, that is half of a normal teaspoonful of heroin. Officer Hedgpeth testified as to the events on July 5 as follows: Defendant first stated that he didn't have any heroin and that he didn't know when he would get any, but subsequently stated that he probably would be able to get a half spoon. Defendant directed Hedgpeth to go into Stockmen's Cafe and Lounge, which was approximately two blocks from the Pastime Pool Hall. Hedgpeth did so. At approximately 10 p.m. defendant arrived at Stockmen's and directed Hedgpeth to proceed to the Pastime Pool Hall and Hedgpeth complied. Hedgpeth then waited in front of the Pastime Pool Hall until approximately 11 o'clock, at which time defendant arrived. He came by way of automobile and subsequent testimony by an Officer Bansmer, who watched this whole series of events from a distance with binoculars, established that one O. D. Patterson, who was involved in the July 7 delivery of heroin, was with defendant when he arrived. Defendant then directed Hedgpeth to go into the rest room of the Pastime Pool Hall. Hedgpeth complied with the request and within 1 or 2 minutes was joined in the rest room by Robert Stigall. A short conversation ensued, but no delivery of heroin was then consummated. Hedgpeth left the rest room and conferred with defendant in the pool hall itself and at that time informed the defendant that he only had $65 for the purchase, but he still wanted to buy the heroin. He further expressed to defendant his reluctance to deal with another party. Defendant then walked to the front part of the pool hall. Shortly thereafter Mr. Stigall walked back into the pool room, motioned Hedgpeth into the rest room, and at that time the heroin delivery was consummated.

On July 7, 1972, at approximately 2:15 a.m., Officer Hedgpeth again contacted the defendant. Hedgpeth testified as to the subsequent events on this date as follows: This meeting took place inside Stockmen's near the front entrance. Hedgpeth at this time asked defendant for a half spoon. After the defendant expressed some fear of Hedgpeth, he then told Hedgpeth that he could get him what he wanted and directed Hedgpeth to go back to the Pastime in about 15 or 20 minutes. Hedgpeth remained in Stockmen's for a few minutes and shortly thereafter one O. D. Patterson walked by him and tapped him on the leg. Hedgpeth followed O. D. Patterson into the men's rest room and at about 2:25 a.m. Hedgpeth gave Patterson $65 in exchange for what he believed was a half spoon of heroin.

Officer Hedgpeth also testified with respect to three meetings between Murray and him at a residence located on Sixth and Nob Hill in Yakima. At the last of these three meetings on July 26, 1972, the final delivery, as charged in the information, was made. Hedgpeth testified as follows with respect to the three meetings on Nob Hill: On July 15, 1972, he met defendant at the residence and informed him that Mr. Patterson had delivered only a quarter of a spoon instead of half spoon on July 7. The defendant "told me at this time that he wasn't associated with Mr. Patterson any more because he wasn't honest and that he would make it right to me, that he would make it right." On July 22, 1972, at the same house, the defendant told Officer Hedgpeth that he did have it, i.e., the heroin, but that he didn't have it with him and that he would give it to Hedgpeth later out on the street. Then on July 26, 1972, Hedgpeth again contacted Mr. Murray in the living room of the same house. A number of other people, including Vicky Daye Scott, were also present. The defendant told Officer Hedgpeth that he had the stuff and at that time walked into an adjoining room. Shortly thereafter, Vicky Daye Scott came out of the room and delivered to Officer Hedgpeth a bindle of heroin. Within just a few seconds, the defendant walked out of the room

and stated according to the officer's testimony that "it wasn't quite a quarter."

It should be noted that Officer Bansmer testified he had been observing Officer Hedgpeth's actions on each of the three pertinent occasions in question. His observations were made from his vehicle. He normally parked some distance away and viewed what he could through binoculars. His testimony corroborated those portions of Officer Hedgpeth's testimony which he could observe from a distance.

■■ The question to be resolved in the instant case is whether the evidence sustains the jury's conclusion that the appellant aided and abetted the parties named in each count of the information in the delivery of heroin. Appellant, relying on *United States v. Moses*, 220 F.2d 166 (3d Cir. 1955); *Commonwealth v. Harvard*, 356 Mass. 452, 253 N.E.2d 346 (1969); *State v. Gladstone*, 78 Wn.2d 306, 474 P.2d 274, 42 A.L.R.3d 1061 (1970); *State v. Catterall*, 5 Wn. App. 373, 486 P.2d 1167 (1971), contends the evidence taken in a light most favorable to the prosecution, only supports facts which show defendant was an agent for the buyer; thus he cannot be found guilty of aiding and abetting the delivery of heroin, *i.e.*, be a seller's agent. Recognizing this assertion, we direct our consideration solely to the question whether there is sufficient evidence to support the counts in the information charging defendant with aiding and abetting the *deliverer*, *i.e.*, the *seller*. In the resolution of this question, we bear in mind that appellant's challenge to the sufficiency of the evidence requires that evidence, and all reasonable inferences to be drawn therefrom, be interpreted in a light most favorable to the state. *State v. Reynolds*, 51 Wn.2d 830, 322 P.2d 356 (1958). Furthermore, the Supreme Court has held that the culpability of an aider or abettor may be established by circumstantial evidence. *State v. Gollihur*, 159 Wash. 206, 292 P. 421 (1930); *State v. Pielow*, 141 Wash. 302, 251 P. 586 (1926).

We must also bear in mind that the culpability of the defendant, if at all, must be brought within RCW 9.01.030,

which makes a principal of one who aids and abets another in the commission of the crime. Although an aider and abettor need not be physically present at the commission of the crime to be held guilty as the principal, his conviction depends on proof that he did something in association or connection with the principal to accomplish the crime. *State v. Gladstone, supra.*

At this point we wish to emphasize certain facts embodied in the factual picture hereinabove related. They are as follows: With reference to each count, the defendant dealt with Mr. Hedgpeth and shortly thereafter the defendant conferred with the deliverers, following which the sale was consummated. With reference to the second sale, Hedgpeth told the defendant that Patterson had delivered only a quarter of a spoon instead of a half spoon and defendant responded that he was not associated with Patterson any more because he wasn't honest and that he would make it right. Again, on July 22, 4 days before the third sale, at the house on Nob Hill the defendant told Hedgpeth that he did have it, *i.e.*, the heroin, but he didn't have it with him and that he would give it to Hedgpeth later out on the street. Also, Patterson, the deliverer involved in the second sale, was with the defendant at the Pastime Pool Hall or in that vicinity at the time the first sale was consummated.

In summary, the above evidence shows a series of crimes, similar in nature, committed close together, in all of which the defendant participated.

■ The rule is that other crimes cannot be shown to establish the crime charged except where they are closely connected and furnish evidence material to that crime. However, generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish intent and/or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. In *State v. Brown,* 31 Wn.2d 475, 481, 197 P.2d 590 (1948), the court stated as follows:

"Evidence of other crimes may be admitted when it

tends to establish a common scheme or plan embracing the commission of a series of crimes so related to each other that proof of one tends to prove the other, and to show the defendant's guilt of the crime charged. *Subsequent* as well as prior collateral offenses can be put in evidence, and from such system, identity or *intent* can often be shown. . . . The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system." (Italics ours.) 1 Wharton's Criminal Evidence (11th ed.) 527, § 352.

Also, in *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952), the court with reference to the term "common scheme" said at page 21:

The only purpose of showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. 2 Wigmore on Evidence (3d ed.) 192, § 300. Strictly speaking, the scope of this exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the other offense could be said to evidence a pre-existing design, system, plan, or scheme directed toward the doing of the very act charged. Wigmore, *supra*, p. 202, § 304.

In *State v. Hames*, 74 Wn.2d 721, 446 P.2d 344 (1968), Hames and one Johnnie Goodman were jointly charged with unlawful possession and selling marijuana on June 7, 1966. Hames was convicted by the jury and sentenced while Goodman was acquitted. At the beginning of the trial, and before the evidence was presented to the jury, counsel for Hames advised the court that an issue regarding the admissibility of the contacts with Hames subsequent to June 7, 1966, would probably arise. Narcotics agent McClain testified that on the day of the alleged crime he went to the house where Hames lived and was introduced by an informer who accompanied him. His story was that he offered to buy a lid of marijuana from Hames, but the latter said he had only a half a lid. Goodman, who apparently overheard the conversation, came out of an adjoining room and offered to sell half a lid. The agent took both

30

amounts for which he paid $25. On August 15, 1966, McClain and Abbey, both narcotics agents, returned to visit Hames at his home. It was testified at the trial that Hames then said he had sources of supply and could furnish heroin and cocaine as well as marijuana in large or unlimited quantities. There was also testimony by the agents that Hames was later contacted several times by telephone and was still offering to supply narcotics as late as September 12, 1966. To this offered evidence, the defendant at the trial objected. The objection was overruled. The Supreme Court held that the subsequent conversations were admissible on three grounds: identity, common scheme or plan, and intent.

Based upon the above authorities, we hold that the conversations, acts, and conduct of the defendant subsequent to the first sale could properly be considered by the jury in determining the guilt or innocence of the defendant on each count of the information for it tends to establish a common scheme or plan and intent on the part of the defendant to aid and abet the delivery involved in each count of the information. The totality of the evidence herein convinces us of its sufficiency to send to the jury the question whether defendant aided and abetted Stigall, Patterson and Scott in the unlawful delivery of heroin, a controlled substance. That vital element—a nexus—between the accused and the parties whom he is charged with aiding and abetting in the commission of the crimes is present.

█ As near as we are able to determine from appellant's brief, there is a 2-pronged error assigned with reference to the summation by the state's counsel. The first is that in his summation to the jury, counsel for the state erroneously misstated the evidence. The second is that inferences and deductions made by state's counsel could not properly be based on the evidence. To both of these contentions we find that no objections were made at the time nor was the court requested to intervene and instruct the jury to disregard the prosecutor's statements and arguments. Since this procedure was not followed, the appellant cannot now complain. *State v. Mattoon*, 56 Wn.2d 688, 354 P.2d 908 (1960).

However, our examination of the record shows conclusively that counsel did not misstate the evidence, and our examination of the record also without doubt indicates that the remarks of the prosecuting attorney were based upon the evidence and were within the realm of fair comment and hence not error. *State v. Mays*, 65 Wn.2d 58, 395 P.2d 758 (1964).

Furthermore, the court in instruction No. 1 instructed as follows:

Counsel's remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the court.

In view of the fact that we have concluded that the prosecuting attorney's remarks did not misstate the evidence and that his argument was within the realm of fair comment, it follows that there was no flagrant misconduct that an instruction would not have cured. *See State v. Mattoon, supra.*

Hence, the trial court's denial of all motions must be sustained.

Judgment affirmed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied January 15, 1974.

Review denied by Supreme Court March 5, 1974.