# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74019-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JERMAINE DAVID GREENE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 13, 2017 |

2017 MAR 13 AM 10: 47

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

VERELLEN, C.J. — The State charged Jermaine Greene with violating the Uniform Controlled Substances Act, possession with intent to deliver cocaine.[1] The trial court denied Greene's motions to dismiss. Because a rational jury could find him guilty of the crime charged beyond a reasonable doubt, there was sufficient evidence and the trial court did not abuse its discretion in denying Greene's motions to dismiss. On cross-examination, Greene's counsel attacked the credibility of a State's witness and challenged the witness to admit that he had no context to believe Greene was selling rock cocaine. Because Greene's counsel opened the door to previously prohibited testimony, the trial court did not abuse its discretion when it allowed the State to elicit testimony to clarify and explain his testimony. At sentencing, Greene's counsel did not request a parenting sentencing alternative. Because Greene's eligibility for a parenting

---

[1] RCW 69.50.401(1), (2)(a).

sentencing alternative depends on facts outside the existing record, he does not establish he was denied effective assistance of counsel. We affirm.

FACTS

On October 27, 2014, the west precinct anti-crime team was working an undercover "see-pop" operation on Third Avenue, between Pike and Pine.[2] Officer Simon Edison, dressed in plain clothing, walked through this area looking for drug transactions. At approximately 10 p.m., Officer Edison saw Jermaine Greene and Alvalina Fortson together, interacting with two other individuals he knew.

Officer Edison saw James Lamping interact with Greene, who gestured toward Fortson. Lamping approached Fortson, who was standing next to Greene. Fortson exchanged what Officer Edison "recognized as being a crack rock, a cocaine crack rock, with Mr. Lamping, for what appeared to be U.S. currency."[3]

When Lamping walked away, Officer Edison saw Eric Jordan approach Greene and Fortson. Greene gestured toward Fortson, then reached into the breast pocket of his jacket and pulled out something. Officer Edison saw Greene drop rocks of cocaine into Fortson's hand. Jordan gave Fortson money, and she dropped the rock cocaine into Jordan's hand.

When Jordan walked away, Officer Edison saw an unknown woman approach Greene and Fortson. Greene "gestured to Fortson, and the female then turned to face

---

[2] Report of Proceedings (RP) (May 27, 2015) at 48.
[3] RP (Mar. 17, 2015) at 76.

[Fortson]."[4] Like the exchange with Lamping and Jordan, the unknown woman appeared to exchange money for rock cocaine.

As Officer Edison was calling the arrest team, Greene reached into his right breast pocket, retrieved an amount of rock cocaine, dropped it into Fortson's hand, and then Fortson placed the rock cocaine in the bra area of her clothing. For the entire time Officer Edison observed Greene and Fortson, they never separated. Greene and Fortson walked away from the area together "shoulder to shoulder," eastbound on Pine Street.[5] Because their backs were facing Officer Edison at this point, he was unable to see their hands.

Police arrested Greene and Fortson together. Greene had $120 in an outside zipper pocket of his jacket and $13 on him, but police were unable to find any rock cocaine on his person. Police found $22 and a plastic bag with small rocks of cocaine, both tucked into Fortson's bra.

At the first trial, Greene moved to dismiss for lack of evidence after the State rested. The court denied Greene's motion, but the jury was unable to reach a verdict and the court declared a mistrial.

In May 2015, this case came on for a second trial before a different judge. Before trial, the court ruled that Officer Edison could testify that he knew Lamping and Jordan, but could not testify that he knew they were drug users. At trial, Greene's counsel cross-examined Officer Edison and elicited testimony that Officer Edison could not hear what Lamping and Greene said to each other during their interaction:

---

[4] Id. at 111.
[5] RP (May 27, 2015) at 72.

3

Q: And you can't recall what the specific gesture was that Mr. Greene supposedly made?

A: Correct.

Q: But then Mr. Lamping proceeded to engage Ms. Fortson, correct?

A: Well, as I've written in my statement, one of the follow-up gestures by Mr. Greene was actually pointing to Ms. Fortson, whereupon Mr. Lamping faced Ms. Fortson directly.

Q: Okay. So you say you saw Mr. Greene point to Ms. Fortson, but at this point *you have no idea what the conversation was about*, if there was even conversation?

A: Beyond what I surmised, correct

Q: So it's *entirely* possible that Mr. Greene was simply saying, yeah, that's her or something completely unrelated to a drug transaction?

A: Well, it's not possible because I witnessed a drug transaction.

Q: Okay. So you're saying that just by virtue of the fact that a drug transaction occurred that that gesture was related to the transaction?

A: That would be--yeah--that would be what my expectation was.

Q: Okay. That was your opinion of what happened[?]

A: Well, sir, I did witness a drug transaction.

Q: Okay. But you cannot say with certainty that the gesture was related?

A: I can say with pretty, yeah, I can say with certainty that that's what the gesture was about.

Q: *Even though you had no context for the gesture[?]*

A: No, I had plenty of context for the gesture.

Q: Leading up to that point?

A: Yes, actually.

4

Q:     But you just stated that you heard no words exchanged[?]

A:     Correct.

Q:     You had never met Mr. Greene previously[?]

A:     Correct.

Q:     You had no idea who he was[?][6]

At that point, the trial court granted the State's request for a sidebar, and ruled,

> *I do believe the door's been opened based on the questions that have been asked* thus far, and I don't know that I need to explain it more, but I think *the Officer has been basically asked, or he's been put to the test of his level of certainty based on what he knew* and this is a part of, I'm sure, what he will testify to when asked.  So I do believe the door has been opened and I will permit on redirect questioning or cross about Mr. Lamping being a known drug dealer.[7]

Officer Edison then testified that he knew Lamping was a drug user.  The trial court denied Greene's half-time motion to dismiss for insufficient evidence.  The jury found Greene guilty as charged.

At sentencing, Greene indicated that he did not want to participate in the drug offender sentencing alternative.  Greene said, "I try to be out there for my kids."[8]  Toni Washington, the mother of his children, also addressed the court.  Washington recognized that Greene "doesn't make the best decisions sometimes" but that he has children and "they're watching him--but they're also growing up in that pattern, and so I just want to put that in[,] that they need [their] father."[9]  Washington also acknowledged,

---

[6] RP (May 27, 2015) at 80-82 (emphasis added).

[7] Id. at 84 (emphasis added).

[8] RP (Sept. 18, 2015) at 248.

[9] Id. at 251.

I haven't always made the best choices, and so I'm in the predicament that possibly the boys might lose, you know, both of their parents, and (indiscernible) our mom is very sick.

So I just would, you know, I think an exceptional sentence—instead of focusing on, you know, guilty or not guilty, that part, just do it for the kids' sake, that he can be reunited with his kids.[10]

Greene was sentenced to 60 months of prison, the low end of the standard range.

Greene appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Greene argues there was insufficient evidence at either his first or second trial for a jury to find that he was an accomplice to possession with intent to deliver a controlled substance.

To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] This court draws all reasonable inferences from the evidence in favor of the State and interprets the evidence most strongly against the defendant.[12] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[13] "Circumstantial evidence and direct evidence are equally

---

[10] Id.

[11] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[12] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[13] Id.

reliable, and we must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.[14]

The trier of fact had to find that on October 27, 2014, Greene or an accomplice possessed a controlled substance and that Greene or an accomplice possessed the substance with the intent to deliver.[15] By statute, and as instructed to the jury,

> [a] person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
>
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
>
> (2) aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.[16]

Greene argues, besides his "mere presence, there was no other evidence" connecting Greene to Fortson's possession with intent to deliver.[17] He also argues merely providing information on where and from whom to purchase drugs does not establish complicity.[18]

---

[14] State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

[15] RCW 69.50.401.

[16] Clerk's Papers (CP) at 58.

[17] Appellant's Br. at 14.

[18] See In re Welfare of Wilson, 91 Wn.2d 487, 588 P.2d 1161 (1979) (reasoning that although a bystander's presence may encourage the principal actor, "that does not in itself make the bystander a participant in the guilt," and "something more than presence alone plus knowledge of ongoing activity must be shown to establish the

Viewed in a light most favorable to the State, the evidence showed Greene and Fortson were associated with each other and that Greene was not merely *present*. Officer Edison observed them stand together and act in concert through three transactions with three different individuals, exchange drugs for money, and leave the area shoulder to shoulder. In each transaction, the buyer approached them, made contact with Greene, and Greene directed the buyer to Fortson. Officer Edison saw Greene give rocks of cocaine to Fortson and saw Fortson exchange the rocks of cocaine with customers for money.

Greene contends the State failed to prove Greene actually supplied the rock cocaine police found on Fortson. But even if Officer Edison may not have pinpointed the exact location of the plastic bag in Fortson's bra area through his testimony, the State is entitled to reasonable inferences. We can reasonably infer from the direct and circumstantial evidence that there was sufficient evidence for a rational trier of fact to find the essential elements of the crime charged beyond a reasonable doubt in both the first and second trial.

## II. "Opening the Door" on Cross-Examination

Greene argues the trial court abused its discretion when it ruled that Greene's counsel opened the door to testimony that Officer Edison knew Lamping was a drug user.

---

intent"); State v. Gladstone, 78 Wn.2d 306, 474 P.2d 274 (1970) (record lacked "any proof" that the defendant and another individual "had any arrangement, agreement or understanding, or in any way conspired and confederated with each other concerning the sale of marijuana").

The opening the door doctrine allows for the admission of evidence otherwise inadmissible based on the actions of the opposing party.[19]  Generally, once a material issue has been raised by one party, the opposing party will be allowed to explain, clarify, or contradict the evidence.[20]  The purpose of the rule is to avoid a purely one-sided presentation of the evidence:

> It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it.  Rules of evidence are designed to aid in establishing the truth.  To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths.  Thus, it is a sound general rule that, when a party opens up a subject of inquiry on direct or cross-examination, he contemplates that the rules will permit cross-examination or redirect examination, as the case may be, within the scope of the examination in which the subject matter was first introduced.[21]

We review a trial court's decision to allow evidence under the open door rule for abuse of discretion.[22]  A trial court abuses its discretion when "no reasonable person would have decided the issue as the trial court did."[23]

Greene argues the court's ruling on the motion in limine precluded Officer Edison's testimony about Lamping under ER 403.  Greene argues if this testimony was

---

[19] State v. Jones, 144 Wn. App. 284, 298, 183 P.3d 307 (2008) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 566-67 (5th ed. 2007)).

[20] State v. Berg, 147 Wn. App. 923, 939, 198 P.3d 529 (2008); see 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.15, at 77-78 (6th ed. 2016).

[21] State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[22] State v. Fisher, 165 Wn.2d 727, 750, 202 P.3d 937 (2009).

[23] State v. Russell, 125 Wn.2d 24, 78, 882 P.2d 747 (1994).

crucial to the State's case, it should have made this argument in response to Greene's motion in limine to preclude it. But the doctrine allows for the admission of evidence once the door has been opened, even if the trial court has previously barred the evidence.

Alternatively, Greene argues the testimony was not necessary to explain, clarify, or rebut the evidence, and any reference to "context" was about a lack of "verbal context."[24] But Greene's counsel did not refer only to *verbal* context on cross-examination; his questions directly asserted Officer Edison had "no context" to construe Greene's gestures when he was interacting with Lamping and Jordan. Allowing Greene's counsel to pursue a line of questioning on cross-examination that shows half of the picture, while hiding the other half, is a precise example of what the opening the door doctrine seeks to prevent. Here, Officer Edison's testimony about how he knew Lamping clarified and explained what he observed.

We conclude the trial court did not abuse its discretion when it concluded Greene's counsel opened the door by claiming Officer Edison had no context for Greene's gesture.

### III. Ineffective Assistance of Counsel

Greene argues his counsel at trial was constitutionally ineffective for failing to ask the trial court for a parenting sentencing alternative under RCW 9.94A.655.

Criminal defendants have the right to effective assistance of counsel under our state and federal constitutions.[25] In order to establish ineffective assistance of counsel,

---

[24] Appellant's Br. at 22.
[25] U.S. CONST. AMEND. VI; WASH. CONST. ART. I, § 22.

10

Greene must demonstrate both that counsel's representation fell below an objective standard of reasonableness and prejudice resulted.[26] To show that he was prejudiced, Greene must establish that, but for counsel's deficient performance, there is a reasonable probability that the proceedings would have been different.[27] Where the ineffective assistance claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record.[28]

A parenting sentencing alternative is an exception to the general rule that a sentencing court must impose a sentence within a defendant's standard sentencing range.[29] If the defendant is eligible and the court determines this alternative is appropriate, the court will waive imposition of the standard range sentence and instead impose a sentence of 12 months of community custody.[30] The statute provides,

> (1) An offender is eligible for the parenting sentencing alternative if:
>
> (a) The high end of the standard sentence range for the current offense is greater than one year;
>
> (b) The offender has no prior or current conviction for a felony that is a sex offense or a violent offense;
>
> (c) The offender has not been found by the United States attorney general to be subject to a deportation detainer or order and does

---

[26] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting id.).

[27] Strickland, 466 U.S. at 687-88.

[28] State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A personal restraint petition allows a defendant to establish facts outside the record on direct appeal.

[29] State v. Mendoza, 63 Wn. App. 373, 375, 819 P.2d 387 (1991); see also RCW 9.94A.510, .530.

[30] RCW 9.94A.655(4).

11

not become subject to a deportation order during the period of the sentence;

(d) The offender signs any release of information waivers required to allow information regarding current or prior child welfare cases to be shared with the department and the court; and

(e) The offender has *physical custody of his or her minor child* or is a legal guardian or custodian with physical custody of a child under the age of eighteen *at the time of the current offense.*[31]

Greene argues his counsel was ineffective for failing to propose a parenting sentencing alternative and request a continuance to investigate it. Greene argues there is a reasonable probability that, absent counsel's deficient performance, the trial court would have imposed the parenting sentencing alternative.

But the existing record on appeal does not establish Greene was eligible. Greene and the mother of his children addressed the court at sentencing. There was no assertion or reasonable inference that he had physical custody of his children at the time the crime was committed and no showing that a continuance would have generated such evidence. Therefore, on this record, Greene does not establish ineffective assistance.

### IV. Appellate Costs

Greene asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party.[32] However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial

---

[31] RCW 9.94A.655 (emphasis added).

[32] RAP 14.2.

circumstances have significantly improved since the last determination of indigency."[33]

Here, Greene was found indigent by the trial court. If the State has evidence indicating that Greene's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

WE CONCUR:

_____

_____    _____

---

[33] RAP 14.2 (amended effective Jan. 31, 2017).