[No. 4506–1.  Division One.  April 10, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN ALAN MATSON, *Appellant*.

*David C. Mitchell,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney,* and *Thomas J. Wynne, Deputy,* for respondent.

CALLOW, J.—In April 1975, the defendant John Alan Matson had been employed a short time as manager of the Lynnwood Amusement Center when he met a man who, unknown to him, was an undercover agent of the Washington State Patrol Drug Control Assistance Unit. At that time, the agent–patrol officer asked the defendant about the possibility of purchasing "acid" (LSD). The defendant replied that he could supply some. Thereafter, the agent and the defendant engaged in several conversations concerning the price of the LSD, but no actual sale of LSD was consummated.

In the early evening of May 3, 1975, the agent called the defendant and again inquired whether the defendant knew where he could buy some LSD. The defendant told him that he would be able to supply the LSD if the agent could come to the Amusement Center in 10 minutes. The agent immediately went to the Lynnwood Amusement Center and

approached the defendant's desk upon entering the building. The defendant motioned to a young male juvenile who was also present in the Amusement Center. The juvenile produced three pieces of "blotter acid" wrapped in tinfoil from his wallet and these were turned over to the officer. There was a contradiction in the testimony at trial as to whether the defendant handled the LSD prior to the officer's receipt thereof and as to whether or not the defendant announced the $6 price for the LSD. The state patrol agent put $6 onto the desk and the juvenile picked up the money and put it into his wallet.

The agent and the defendant then discussed the purchase of a large quantity of LSD. At this time, the defendant told the agent to give him a call the next day, when he would provide up to 500 "spots" of acid. The agreed price was $75 per hundred "spots" of acid. During the next few days, the agent and the defendant talked on the telephone several times concerning the proposed large volume sale of LSD.

The defendant was arrested and charged by information with one count of delivery of a controlled substance on May 3, 1975, and one count of possession of marijuana on May 6, 1975. The second count was subsequently dismissed on the State's motion. Trial commenced October 7, 1975.

During the trial, the defendant testified in his own behalf and he called the juvenile as a defense witness. It was brought to the court's attention that the juvenile had not been adjudicated in juvenile court with reference to the incident on May 3, 1975. Both the State and the defense were under the impression that the juvenile had been previously adjudicated with regard to this incident. After consulting with counsel appointed by the court, the juvenile elected to exercise his Fifth Amendment rights and refused to testify. The defendant asked that the court grant immunity to the witness in order that he might be compelled to testify. The State took the position at trial that the juvenile was still chargeable for this offense in juvenile court, and

that under CrR 6.14 it would not be appropriate to foreclose the possibility of proceedings against him by granting him immunity. The defense motion was denied by the court.

The defendant was tried on the delivery of a controlled substance count. The jury returned a verdict of guilty.

The defendant appeals, raising as issues:

1. Is the agency–buyer exemption from criminality for participation in a drug delivery transaction a defense in the state of Washington for the individual who acts solely as agent for the buyer?

2. May one be an aider and abetter of one who commits a violation of the Controlled Substances Act, RCW 69.50?

3. Should the trial court have granted immunity to the juvenile witness who refused to testify by virtue of the Fifth Amendment when it was called upon to do so by the defendant?

4. Was the evidence such that an instruction should have been given on entrapment?

5. Did the trial court commit prejudicial error when it allowed testimony on rebuttal which exceeded the scope of the cross–examination?

### THE SO–CALLED AGENCY–BUYER EXEMPTION
### IS NO LONGER A DEFENSE

■ *State v. Catterall,* 5 Wn. App. 373, 486 P.2d 1167 (1971) and *State v. Walker,* 82 Wn.2d 851, 514 P.2d 919 (1973) established that a showing that the defendant was an agent solely of the purchaser and not of the seller in a drug transaction was a defense to prosecution under the uniform narcotic drug act. The uniform narcotic drug act has since been repealed and replaced with the Uniform Controlled Substances Act, RCW 69.50 (effective May 21, 1971, RCW 69.50.601). The buyer–agency exemption to the old narcotics act was based upon the fact that the act specifically punished the selling of a narcotic, but made no mention of the purchasing of a narcotic. Thus, the court ruled that a purchaser's agent cannot be prosecuted under

the act. *State v. Catterall, supra.* The Uniform Controlled Substances Act, however, provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401. The definition of "deliver," herein at issue, is found in RCW 69.50.101(f):

> "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

Thus the new statute makes no distinction between the selling and the purchasing of drugs and eliminates the distinction between whether a buyer or seller acts as a principal or agent so long as an illegal transfer of a controlled substance occurs. *State v. Sherman,* 15 Wn. App. 168, 547 P.2d 1234 (1976), held that the buyer exemption no longer exists under the new Uniform Controlled Substances Act as a result of this change in language and definition. *State v. Murray,* 10 Wn. App. 23, 516 P.2d 517 (1973), which had earlier considered the application of the buyer exemption in a prosecution under the Uniform Controlled Substances Act, did not bring the change of legislation to the attention of the court, and therefore is not controlling on the issue as presented to us. We hold that the rule is properly set forth in *State v. Sherman, supra.*

ONE MAY AID AND ABET A VIOLATION OF THE
CONTROLLED SUBSTANCES ACT, RCW 69.50

When the activities described were taking place, the law of aiding and abetting was codified in RCW 9.01.030.[1] The defendant contends that this statute applies only to common–law crimes, that is, those codified in Title 9 of RCW. Thus he contends that one cannot aid and abet another in the commission of a purely statutory–created crime, such as that of the Uniform Controlled Substances Act codified in

---

[1]RCW 9.01.030 was repealed effective July 1, 1976, and the statute now dealing with legal accountability, complicity and aiding and abetting is RCW 9A.08.020.

RCW 69.50, which itself contains no aiding and abetting provision.

■ RCW 9.01.030, which was in effect at the time of the commission of the acts herein referred to, was enacted in 1909 when the state's statutes were codified in Ballinger's Code of 1897, which was not divided into titles. The aiding and abetting statute has been applied historically to violations of the uniform narcotic drug act which was codified in RCW 69.40. *State v. Walker, supra.* The aiding and abetting statute has also been applied to convict one tried as an aider and abetter under the Uniform Controlled Substances Act in *State v. Murray, supra.* We hold that the aiding and abetting statute applies to prosecutions under the Uniform Controlled Substances Act. The passage of a new act dealing with a particular area of criminal activity did not eliminate the applicability of the aiding and abetting statute to all crimes wherein one person could aid and abet another.

### DENIAL OF IMMUNITY TO DEFENSE WITNESS PROPER

The defendant contends that it is unlikely that the juvenile witness would have been prosecuted. He states that the identity of the juvenile had been known for months and the juvenile had been adjudicated in juvenile court for a similar incident that had occurred on the following day. The defendant argues that he was entitled to have had the court grant immunity to the juvenile so that he could be compelled to testify when called by the defendant. The defendant suggests that there is inherent authority in the court to grant immunity to witnesses.

■ The State raises CrR 6.14, which provides for the granting of immunity at the discretion of the trial court *only upon the motion of the prosecution.* The absence of a right in a defendant to compel a grant of immunity to a witness is consistent with the fact that the prosecutor, as an agent of the State, performs an important role in deciding whether or not to grant immunity.

An examination of this statute clearly leads to the conclusion that the making of a motion to grant immunity

must be left to the discretion of the State's representative. The State has wisely provided that this power should lie in the discretion of the prosecuting attorney or the attorney general in certain cases. It follows that the trial court was in error in affirming the action of the justice of the peace in granting immunity upon the motion of one not a prosecuting attorney or attorney general or the duly authorized representative thereof.

*Petition of Dohany,* 301 Mich. 273, 278, 3 N.W.2d 272, 274 (1942). The granting of immunity has long been properly regarded as only a prosecutorial tool:

Immunity provisions originated in prior laws which authorized the prosecution to offer immunity to some involved persons if they would testify for the government in prosecutions of others likewise involved. They were considered an aid to accomplish justice, where, because of the involvement of many, evidence to prove guilt beyond a reasonable doubt could not be obtained. The object then was to prevent the failure of prosecutions solely for the reason vital evidence could not be obtained. It was a needed exception to the constitutional or statutory right to refuse to testify against oneself. There was no such compelling reason to aid the defense, and the general policy of the law is not to set aside the prevailing law by a general statute unless it is expressly or necessarily required. The need for its application for the defendant has not appeared.

Then again such a statute must not be given an interpretation that could possibly result in an absurdity. As pointed out in the case of United States v. Ernest, 280 F. 515, 517, by way of illustration: "A. and B., jointly accused and tried, each could refrain from testifying for himself, but could subpoena and call the other, both testify as witnesses only, and the case would end in dismissal as to both, a judicial farce. Or of six involved, one known, accused, and tried could subpoena and call the others, and confer upon them an immunity bath."

*State v. Perry,* 246 Iowa 861, 872–73, 69 N.W.2d 412, 419 (1955). A defendant does not have a right to a grant of

immunity to a witness, or to compel such a grant.[2] *United States v. Allstate Mortgage Corp.,* 507 F.2d 492 (7th Cir. 1974), *cert. denied,* 421 U.S. 999 (1975); *Sanders v. State,* 69 Wis. 2d 242, 230 N.W.2d 845 (1975).

## No Instruction on Entrapment Was Necessary

■ The trial court properly concluded that there was insufficient evidence to require an instruction on entrapment. *State v. Waggoner,* 80 Wn.2d 7, 490 P.2d 1308 (1971). Further, an instruction on entrapment is proper only where the defendant has admitted that the crime took place. *State v. Walker,* 11 Wn. App. 84, 521 P.2d 215 (1974); *State v. Draper,* 10 Wn. App. 802, 521 P.2d 53 (1974). The defense presented by the defendant was that he was unaware of the sort of transaction going on and thus denied the crime.

---

[2]As observed in *Earl v. United States,* 361 F.2d 531, 534 (D.C. Cir. 1966), *cert. denied,* 388 U.S. 921 (1967), with Judge Burger (now Chief Justice) speaking for the court:

Here the prosecution has not affirmatively withheld a witness or concealed evidence; it transported the witness from a Federal Prison and produced him in court. At that point the witness declined, on Fifth Amendment grounds, to testify. What Appellant asks this Court to do is command the Executive Branch of government to exercise the statutory power of the Executive to grant immunity in order to secure relevant testimony. This power is not inherent in the Executive and surely is not inherent in the judiciary. In the context of criminal justice it is one of the highest forms of discretion conferred by Congress on the Executive, *i. e.,* a decision to give formal and binding absolution in a judicial proceeding to insure that an individual's testimony will be compelled without subjecting him to criminal prosecution for what he may say. The effect of the immunity grant avoids any incrimination. The Government does not suggest that Congress could not provide for a procedure giving a defendant a comparable right to compel testimony, but only that Congress has not done so. Whatever the merits of the arguments in favor of such a procedure, it is obvious that it would require safeguards to preclude abuses; the complexity and difficulty of evaluating the impact of that course suggest at once the inadequacy of the facilities available to the judiciary to make the assessment. We conclude that the judicial creation of a procedure comparable to that enacted by Congress for the benefit of the Government is beyond our power.

### ADMISSION OF REBUTTAL PROPER

Upon rebuttal the prosecution was able to introduce evidence of subsequent telephone calls about a large scale sale of LSD, and also as to the defendant's cooperation with the police in arresting other drug abusers. This evidence was introduced to contradict the statement of the defendant that he had had only one contact with police officers subsequent to the incident of May 3, that he did not know the police officer, and that he would have remembered conversations concerning drugs. The propriety of the admission of rebuttal testimony is a matter resting within the discretion of the trial court. *State v. Brooks,* 16 Wn. App. 535, 557 P.2d 362 (1976); *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968). The conversations were independently admissible even though they took place after the offense charged occurred. *State v. Hames,* 74 Wn.2d 721, 446 P.2d 344 (1968); *State v. Hennings,* 3 Wn. App. 483, 475 P.2d 926 (1970).

Our disposition of the issues raised makes comment on other issues presented unnecessary. No assignment of error was made to the instructions given by the trial court, and therefore they are not before us on review.

The judgment is affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied June 23, 1978.

Review denied by Supreme Court December 1, 1978.