[No. 24661-5-I.   Division One.   January 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO A. GALISIA, ET AL, *Defendants*, TIMOTHY GEORGE NORGARD, *Appellant*.

*Karen Chaney* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Pahmeier, Deputy,* for respondent.

AGID, J. — Timothy George Norgard appeals his conviction for possession with intent to deliver cocaine in violation of RCW 69.50.401(a) based on his role as an accomplice to a delivery of the drug. He argues that there was insufficient evidence to support his conviction, and that the trial court erred in failing to instruct the jury with regard to entrapment. We affirm.

The State's case was based largely on the testimony of David Palmer, a paid informant for the King County Police. Palmer first came into contact with Norgard in early March 1989 when Palmer picked up Norgard to give him a ride while Norgard was hitchhiking home from work. A conversation concerning drugs ensued. Palmer told Norgard that he was a drug buyer and asked Norgard if he knew where he, Palmer, could buy drugs. Norgard's initial response was "maybe". Palmer promised to pay Norgard $100 an ounce for any cocaine he was able to purchase with Norgard's help. When Palmer asked Norgard for his phone number, Norgard gave it to him. Palmer called Norgard three times

during the following week in an effort to obtain drugs. Each time Norgard told Palmer that he couldn't help him.

Five days later, on March 14, 1989, Palmer ran into Norgard in downtown Seattle around 8:30 or 9 p.m. Norgard was with a friend identified only as "Paul" with whom he testified he frequently used drugs. There is some question as to who initiated contact on that occasion. Both sides agree, however, that when the question of whether Norgard could help Palmer buy any cocaine arose, Norgard told Palmer that he might be able to help him. Norgard introduced Palmer to Paul, who then left and returned with another individual, later identified as codefendant Antonio Molina. The four men then got into Palmer's car and, under Paul's direction, drove to 8th Avenue and East Madison. At 8th and Madison, Molina left the car and returned shortly thereafter saying he could get the cocaine for $650 an ounce. Palmer left to go get the money, after telling Norgard that if he waited he would give him half an ounce of cocaine and $100 for each ounce of cocaine he purchased.

Palmer returned with the money and undercover detective Nelson at 10:15 p.m. Palmer then left with Molina to go to an apartment at 8th Avenue and Cherry Street to discuss price and quantity, while Norgard remained with Nelson in Nelson's car. While in the car, Norgard asked Nelson if he could buy some cocaine from Nelson after the deal was completed, to which Nelson replied that he could.

After Palmer returned to the car, Molina approached with two individuals with whom Palmer had met earlier to negotiate the terms of the drug deal. After the men showed Palmer a bag of white powdery substance, Palmer told Nelson that the deal was to take place by the side of a nearby building. Nelson activated the Agent Alert before joining Palmer, Norgard, Molina and the other two men at the side of the building. Before the drugs and money actually changed hands, additional officers arrived and Norgard was arrested along with the others. Norgard later stated to Detective Gordon that although he did not personally have any cocaine, he knew Palmer wanted cocaine and he knew

some people who could sell cocaine, so he brought them together so they could make the deal.

## I
### ENTRAPMENT

At trial, the court denied defense counsel's request for a jury instruction concerning entrapment on the basis that, because entrapment is an affirmative defense, a defendant must admit the crime with which he is charged to allow the instruction to be given. Since Norgard did not admit he was guilty of possession with intent to deliver cocaine, the instruction was refused.

Entrapment is defined as follows:

> In any prosecution for a crime, it is a defense that:
> (a) The criminal design originated in the mind of law enforcement officials . . . and
> (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

RCW 9A.16.070(1).

█ While a defendant need not present that quantity of evidence necessary to create a reasonable doubt in the minds of the jurors to be entitled to an entrapment instruction, some evidence must be adduced to support it. *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983); *State v. Roberts*, 88 Wn.2d 337, 345-46, 562 P.2d 1259 (1977). In determining whether the evidence supports giving the instruction, a court should consider the defendant's testimony and the inferences that can be drawn from it. *State v. Morgan*, 9 Wn. App. 757, 759-60, 515 P.2d 829, *review denied*, 83 Wn.2d 1004 (1973). Failure to give an instruction is reversible error if there was evidence to support the defense. *State v. Ladiges*, 66 Wn.2d 273, 276-77, 401 P.2d 977 (1965); *State v. Kerr*, 14 Wn. App. 584, 587, 544 P.2d 38 (1975), *review denied*, 87 Wn.2d 1001 (1976).

The State relies on *State v. Matson*, 22 Wn. App. 114, 121, 587 P.2d 540 (1978) for the proposition that "an instruction on entrapment is proper only where the defendant has admitted that the crime took place." In so stating, however, *Matson* failed to distinguish circumstances where

a defendant admits that the *activity* on which a charge is based took place, from circumstances where a defendant actually admits to committing the crime as charged. In fact, earlier cases refer not to the "crime" charged but to the "act" charged. The distinction between denying that an event occurred and denying that the event resulted in criminal liability is critical in the context of this case. In *Matson*, the defendant claimed that he was unaware of the "sort of transaction" taking place. 22 Wn. App. at 121. Similarly, in *State v. Draper*, 10 Wn. App. 802, 806, 521 P.2d 53, *review denied*, 84 Wn.2d 1002 (1974), on which the *Matson* court relied,[1] the defendant consistently denied that the actions on which the charge was based even took place. *Matson* and *Draper* thus do not require a defendant to admit either the crime itself or all the elements of a crime before being entitled to an entrapment instruction. It is enough that a defendant admit acts which, if proved, would constitute the crime. Norgard met this threshold by admitting the acts which made him an accomplice to the drug deal.

However, under the facts of this case, we hold that Norgard was not entitled to an entrapment instruction. The evidence in the record before us would not permit a reasonable jury to conclude that on the day in question, Norgard was "lured or induced to commit a crime which [he] had not otherwise intended to commit." RCW 9A.16-.070(1). Specifically, we note that Norgard clearly stated on cross examination that he initially gave Palmer his phone number *after* Palmer requested his assistance in buying drugs; that he later told Palmer on the street that he might be able to help him and introduced Palmer to Paul, who in turn put Palmer in touch with Molina; that he remained on the scene in order to obtain the cocaine and money he had been promised; and that he negotiated a second deal with Nelson while waiting in the car for the first deal to be

---

[1]*State v. Walker*, 11 Wn. App. 84, 87, 521 P.2d 215 (1974), on which the *Matson* court also relied, simply mentioned the general principle in passing; the particular aspect of the defense of entrapment at issue here was not at issue in that case.

completed. While there is no question that the criminal design originated in Palmer's mind, Norgard's continuing participation in the developing transaction leads us to conclude that he became a willing actor in the drug deal. The evidence is clear that, after Norgard introduced Palmer to Paul and realized that he could benefit by supporting and encouraging the completion of the deal, Norgard remained at the scene for that purpose and willingly associated himself with the transaction. This was not entrapment.

## II
### SUFFICIENCY OF THE EVIDENCE

■ Norgard further contends that there was insufficient evidence to support his conviction for possession of cocaine with intent to deliver based on accomplice liability because no evidence was presented that Norgard was ever personally in possession of the cocaine. In reviewing the sufficiency of the evidence to support a guilty verdict in a criminal case, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Smith*, 106 Wn.2d 772, 725 P.2d 951 (1986); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). A jury verdict will be overturned on review only when it is clear that there is no substantial evidence to support it. *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 709, 575 P.2d 215 (1978). To determine whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt; we need only be satisfied that there was substantial evidence to support the State's case. *State v. McKeown*, 23 Wn. App. 582, 588, 596 P.2d 1100 (1979).

Norgard was convicted as an accomplice on one count of possession with intent to deliver cocaine in violation of RCW 69.50.401(a), which provides:

[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

The accomplice liability instruction given is as follows:

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
The word "aid" means all assistance, whether given by words, acts, encouragement, support or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person is an accomplice.

Physical presence and awareness of the transaction alone are insufficient to establish accomplice liability. *In re Wilson*, 91 Wn.2d 487, 491, 588 P.2d 1161 (1979) (aiding and abetting requires that one associate oneself with the undertaking, participate in it as something one desires to bring about, and seek by one's action to make it succeed).

The appellant argues that there was insufficient evidence to support his conviction for aiding and abetting the *possession* of cocaine with the intent to deliver, as contrasted simply with the delivery of cocaine. Specifically, the appellant urges this court to adopt the analysis of the Fifth Circuit in *United States v. Jackson*, 526 F.2d 1236 (5th Cir. 1976). In *Jackson*, the court held that, although the defendant[2] was associated with the criminal venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed, his conviction could not be upheld because there was no evidence that he helped his codefendant obtain the cocaine or that he exercised any control over it. 526 F.2d at 1237. The appellant here argues

---

[2]He was charged under 21 U.S.C. § 841(a)(1) with aiding and abetting possession with intent to distribute cocaine.

that he, too, did not help his codefendants obtain the cocaine, nor did he at any point exercise control over it.

■ The distinction that *Jackson* makes is appealing in its conceptual clarity. Clauses in both the Washington and the federal statutes distinguish between delivery or distribution alone, and possession with the intent to deliver or distribute. *See* RCW 69.50.401(a); 21 U.S.C. § 841(a)(1). Washington courts, however, have not adopted the distinction made by the *Jackson* court and we decline to do so here. Accomplice liability in Washington is premised on the notion that a defendant need not participate in each element of the crime, nor need he share the same mental state that is required of the principal. *See State v. Rotunno,* 95 Wn.2d 931, 934, 631 P.2d 951 (1981); *State v. Bockman,* 37 Wn. App. 474, 491-92, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984). Rather, it is the intent to facilitate another in the commission of a crime by providing assistance through his presence or his act that makes the accomplice criminally liable.

*Jackson* is also distinguishable on its facts. Unlike Jackson, Norgard was at the scene when the cocaine was produced and offered for sale. Norgard's continuing and purposeful presence and his expressed interest in seeing the transaction succeed so that he could obtain the cocaine and money he was to receive are sufficient to tie Norgard to the possession aspect of the crime which, of course, is an essential precursor to its delivery. We also note that, but for the efforts of Norgard and Paul, the cocaine would not have been brought from the apartment to the site where the transaction was to take place for the express purpose of selling it.

The two Washington cases that the appellant relies on in support of his position, *State v. Amezola,* 49 Wn. App. 78, 741 P.2d 1024 (1987) and *State v. Gladstone,* 78 Wn.2d 306, 474 P.2d 274, 42 A.L.R.3d 1061 (1970), are also distinguishable. In *Amezola,* we held that evidence showing only that the defendant cooked and kept house for household members dealing in heroin was insufficient to establish accom-

plice liability with respect to a charge of possession of a controlled substance with intent to deliver. There was no evidence that the defendant participated in the drug dealing activities at all, including going on deliveries or answering the phone. 49 Wn. App. at 83, 89-90. Norgard, in contrast, directly facilitated the transaction by bringing the parties together and remaining at the scene to obtain a benefit from the transaction.

Similarly, the defendant in *Gladstone* did nothing more than draw a map directing the informant to a house where he could purchase marijuana. 78 Wn.2d at 308. Unlike Norgard, Gladstone neither accompanied the informant nor sought to obtain anything for his part in bringing the parties together. Norgard's actions here do not fall within the range of minimal activities engaged in by the defendants in *Amezola* and *Gladstone*. Because there was more than mere physical presence and knowledge of the transaction, there was sufficient evidence to support the conviction.

Affirmed.

WEBSTER, A.C.J., and FORREST, J., concur.

Review denied at 119 Wn.2d 1003 (1992).